**JENERIC/PENTRON, INC.,**
Plaintiff–Appellant,

v.

**DILLON COMPANY, INC. and Chemichl, Inc., Defendants–Appellees.**

No. 99–1283.

United States Court of Appeals,
Federal Circuit.

March 20, 2000.

William J. Cass, Cantor Colburn LLP, of Windsor, Connecticut, argued for plaintiff-appellant. With him on the brief were Michael A. Cantor, Leah M. Reimer, and Michael J. Rye.

Peter K. Sommer, Phillips, Lytle, Hitchcock, Blaine & Huber LLP, of Buffalo, New York, argued for defendants-appellees. With him on the brief was Rowland Richards.

Before NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

The United States District Court for the District of Connecticut denied Jeneric/Pentron, Inc.'s (Jeneric's) motion for a preliminary injunction against Dillon Company, Inc. and Chemichl, Inc. (collectively, Dillon). *See Jeneric/Pentron, Inc. v. Dillon Co.,* No. 3:98–CV–818 (EBB), 1999 WL 66537 (D.Conn. Feb.3, 1999) (*Jeneric*). Because Jeneric has not shown sufficient reason to overturn the trial court's denial of a preliminary injunction, this court affirms.

### I.

Both Jeneric and Dillon sell porcelain dental restoration products. Jeneric received U.S. Patent No. 5,653,791 ('791 patent) by assignment. The '791 patent covers a two-phase porcelain composition comprising a leucite crystallite phase dispersed in a glass phase. Porcelain compositions are "useful in the preparation and repair of dental restorations such as porcelain-fused-to metal restorations, all-ceramic restorations, inlays, onlays and veneers." '791 patent, col. 1, II. 8–11. In dentistry, porcelain compositions are highly desirable because "they can be colored to closely resemble the teeth they must replace, resist degradation inside the oral cavity and remain biocompatible." *Id.* at II. 16–21. Claims 1 and 2, the only asserted claims, recite:

1. A two-phase porcelain composition comprising a leucite crystallite phase dispersed in a feldspathic glass matrix, a maturing temperature of from *about* 750° to *about* 1050° C. and a coefficient of thermal expansion of from *about* $12 \times 10\text{-}6$ /°C. to *about* $17.5 \times 10\text{-}6$ /°C. (room temperature to 450° C.), said porcelain composition comprising:

| Component | Amount (wt.%) |
|---|---|
| $SiO_2$ | 57–66 |
| $Al_2O_3$ | 7–15 |
| $K_2O$ | 7–15 |
| $Na_2O$ | 7–12 |
| $Li_2O$ | 0.5–3 |
| CaO | 0–3 |
| MgO | 0–7 |
| F | 0–4 |
| $CeO_2$ | 0–1 |

wherein the leucite crystallites possess diameters not exceeding *about* 10 microns and represent from *about* 5 to *about* 65 weight percent of the two-phase porcelain composition.

2. The two-phase porcelain composition of claim 1 further comprising at least one component selected from the group consisting of opacifying agent, pigment and fluorescing agent.

*Id.* at col. 6, II. 12–36 (emphasis added). The '791 patent emphasizes that "[i]t is essential to the practice of the present invention that the leucite crystallites present in the two-phase porcelain composition herein possess diameters not exceeding about 10 microns." *Id.* at col. 2, II. 49–52.

Dillon sells the two accused dental products – Cerpress SL (Cerpress) and Sensation SL (Sensation) – that are used together for construction of dental restorations. Cerpress is a ceramic pellet used as a core or base material; Sensation is an overlay material applied over the Cerpress core to form a complete dental implant. Dillon imports these products from Chemichl, Inc.'s parent company (Chemichl AG) in Liechtenstein. Dillon resells the two products to dental technicians and dentists.

On May 1, 1998, Jeneric sued Dillon alleging infringement of the '791 patent. Soon thereafter, on June 26, 1998, Jeneric filed a motion for a preliminary injunction. In the motion, Jeneric alleged that Sensation literally infringes claims 1 and 2 of the '791 patent, and that Cerpress infringes claim 1 of the '791 patent under the doctrine of equivalents. Dillon, in turn, asserted various affirmative defenses and counterclaims, including non-infringement and invalidity.

The district court first addressed Jeneric's motion. After a three-day hearing, in which the parties presented oral testimony and over 500 exhibits, the district court denied Jeneric's motion for a preliminary injunction. The district court concluded, *inter alia,* that Jeneric did not show a reasonable likelihood of success on infringement. Jeneric appeals.

## II.

■ Under 35 U.S.C. § 283 (1994), a patent owner may preliminarily enjoin alleged infringing conduct to exercise its right to exclude pending final adjudication. A preliminary injunction requires the movant to show four factors: (1) a reasonable likelihood of success on the merits, (2) the prospect of irreparable harm, (3) a balance of the parties' hardships in favor of injunction, and (4) no potential injury to an important public interest. *See Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1195 (Fed.Cir.1988). The grant of a preliminary injunction is within the trial court's discretion. *See Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.,* 74 F.3d 1216, 1219, 37 USPQ2d 1529, 1531 (Fed.Cir.1996). "An abuse of discretion may be established by showing that the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." *Novo Nordisk of N. Am. v. Genentech, Inc.,* 77 F.3d 1364, 1367, 37 USPQ2d 1773, 1775 (Fed.Cir.1996).

■ "Central to the movant's burden are the likelihood of success and irreparable harm factors." *Sofamor Danek,* 74 F.3d at 1219. A court may decline to issue a preliminary injunction if the movant does not prove either of these factors. *See Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 973, 41 USPQ2d 1185, 1188 (Fed.Cir. 1996).

### Likelihood of Success

■ In reviewing a preliminary injunction decision, the likelihood of success factor plays a key role. *See Sofamor Danek,* 74 F.3d at 1219. This showing requires proof on both validity and infringement. *See Hybritech,* 849 F.2d at 1451. To determine the likelihood of success on patent infringement, this court may construe the claim as a matter of law. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The court then determines whether the accused product is likely to fall within the properly construed claim. *See id.* An accused product infringes if it embodies each claim element or its equivalent. *See Unique Concepts, Inc. v. Brown,* 939 F.2d 1558, 1562, 19 USPQ2d 1500, 1503 (Fed.Cir.1991).

■ The first step, claim construction, is a matter of law, which this court reviews independently. *See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc). To determine claim meaning, this court retains at all times its focus on the claims themselves, but also consults the written description, the prosecution history, and at times extrinsic evidence to discern the scientific and technological context at the time of invention. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.,* 182 F.3d 1298, 1309, 51 USPQ2d 1161, 1168 (Fed.Cir.1999); *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996).

█] Under that guideline, the district court construed the claims of the '791 patent by reviewing the specification, prosecution history, and extrinsic evidence. In so doing, the court rejected Jeneric's proposed construction that the dental porcelain composition ranges of the table in claim 1 may vary from the recited values. Instead, the district court construed claim 1 as limiting the ranges of compositions to "the exact weight percentage ranges." *Jeneric*, 1999 WL 66537, at *11. Based on this preliminary record, this court agrees.

█] As the district court correctly stated, the claim language "indicates that the invention's chemical components should be limited to the precise ranges set forth therein." *Jeneric*, 1999 WL 66537, at *10. The district court's claim interpretation finds support in claim construction principles enunciated by this court in other cases. In general, "[a] term such as 'about' is not subject to [ ] a precise construction ... but is dependent on the factual situation presented." *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1280, 6 USPQ2d 1277, 1282 (Fed.Cir. 1988). Without broadening words that ordinarily receive some leeway, *see Modine Manufacturing Co. v. United States International Trade Commission*, 75 F.3d 1545, 1554, 37 USPQ2d 1609, 1615 (Fed.Cir.

1996), the precise weight ranges of claim 1 do not "avoid[ ] a strict numerical boundary to the specified parameter," *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217, 36 USPQ2d 1225, 1229 (Fed.Cir. 1995).

This construction, assigning numerical precision to composition ranges, is particularly appropriate when other variables in the same claims explicitly use qualifying language. *See Modine Mfg.*, 75 F.3d at 1551. Claim 1 contains a mixture of imprecise and precise claim limitations. Specifically, claim 1 uses the word "about" to qualify the values of many variables: the range of the maturing temperature, the coefficient of thermal expansion, the leucite crystallite sizes, and the weight percentage of leucite crystals. In contrast, the claim recites precise ranges for the weight of dental compositions. Under these circumstances, the district court correctly limited the weight ranges to those recited precisely in the table of claim 1.

This reading finds additional support in the written description of the '791 patent. As illustrated below, columns 2 and 3 of a table in the '791 patent disclose the outermost and preferred ranges of dental compositions, respectively:

| Oxide | Range | Preferred | Example 1 | Example 2 |
|---|---|---|---|---|
| $SiO_2$ | 57–66 | 58–65 | 62.1 | 58.0 |
| $Al_2O_3$ | 7–15 | 8–14 | 9.8 | 14.0 |
| $K_2O$ | 7–15 | 11–15 | 14.2 | 15 |
| $Na_2O$ | 7–12 | 7.5–11 | 7.6 | 8.1 |
| $Li_2O$ | 0.5–3 | 0.7–1.5 | 1.1 | 1.5 |
| CaO | 0–3 | 0–1.5 | 1.0 | 1.0 |
| MgO | 0–7 | 0–5 | 1.9 | 1.0 |
| F | 0–4 | 0–3 | 1.9 | 1.0 |
| $CeO_2$ | 0–1 | 0–0.5 | 0.4 | 0.4 |
| Coefficient of thermal expansion (RT to 450 $_0$ C.) (x $10_{-6}/_0$C.) | 12–17.5 | 12–17.5 | 15.0 | 17.4 |
| Maturing Temperature ($_0$C.) | 790–1050 | 800–1000 | 815 | 850 |
| Maturing Temperature ($_0$F.) | 1318–1922 | 1472–1832 | 1500 | 1562 |

'791 patent, col. 3, II. 10–26. Claim 1 covers the outermost ranges listed in column 2 of the table while independent claim 6, not asserted in the present action, cov-

ers the preferred ranges listed in column 3. Under the correct reading of the claims, the porcelain composition ranges represent the outermost bounds of the disclosed embodiments. The specification's teachings are consistent with this claim construction.

■■■■ The district court also found that "evidence shows that claim 1 needed to be written narrowly to avoid being anticipated or rendered obvious by Jeneric's United States Patent No. 4,798,536 ('536 patent)." *Jeneric*, 1999 WL 66537, at *10. In fact, the '791 patent incorporates by reference the '536 patent, which issued over six years before the filing date of the '791 patent. The '536 patent teaches use of dental compositions nearly identical or overlapping with the ranges recited in claim 1 of the '791 patent. "[W]hen a patent claims a chemical composition in terms of ranges of elements, any single prior art reference that falls within each of the ranges anticipates the claim." *Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1346, 51 USPQ2d 1943, 1946 (Fed.Cir. 1999). Thus, Jeneric may not rely on the precise ranges of the claims to distinguish itself from prior art during prosecution and then later construe the ranges more broadly during an infringement action. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1677 (Fed.Cir.1995). The district court properly acknowledged this principle. In sum, this court agrees with the district court that claim 1 limited the compositions to the ranges listed in the table.

Applying the construed claim to the accused device, this court agrees with the district court that Jeneric has not shown a reasonable likelihood of success on infringement. Jeneric presents two theories of infringement: (1) Sensation literally infringes claims 1 and 2 of the '791 patent, and (2) Cerpress infringes claim 1 of the '791 patent under the doctrine of equivalents.

■■■■ Turning first to literal infringement, an accused product literally infringes if every limitation recited in the claim appears in the accused product, i.e., the properly construed claim reads on the accused product exactly. *See Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562, 38 USPQ2d 1471, 1476 (Fed.Cir. 1996). The parties agree that most of the limitations of claim 1 literally read on Sensation. The parties dispute, however, the amount of $CeO_2$ (cerium oxide). Jeneric concedes that Sensation contains 1.61% of cerium oxide, outside the claimed range of 0–1%.

Nevertheless, Jeneric contends that Sensation literally infringes. According to Jeneric, the total amount of cerium oxide in Sensation separates into two components. The first – 0.92% of cerium oxide – acts as an antigreening agent and, thus, falls within the 0–1% range of claim 1. The remaining – 0.69% of cerium oxide – acts as an opacifying or fluorescing agent in a third phase outside the claimed two-phase matrix. To make this argument, Jeneric relies in part on the open-ended nature of claims 1 and 2 having "comprising" transitions. Thus, Jeneric argues that a portion of cerium oxide in the claimed range falls within the literal limits while the remaining portion merely adds to the allegedly infringing matrix. To bolster this argument, Jeneric points to dependent claim 2, reciting a two-phase composition further containing opacifying agent, pigment, and fluorescing agent.

Claim 1 requires a two-phase dental porcelain composition with 0–1% of cerium oxide. Claim 1 does not place functional limitations on the percentage of cerium oxide, thus distinguishing opacifying, coloring, or fluorescing cerium oxide from antigreening cerium oxide. Rather, the claim specifies 0–1% cerium oxide. Sensation contains 1.61% – an amount well outside the precisely claimed range. This court rejects any attempt to carve out a portion of cerium oxide according to functions not recited in the claim. Jeneric's infringement theory essentially proposes that the precisely claimed ranges do not limit the

amount of porcelain compositions. That argument fails because it would read out of claim 1 the express claim ranges. *See Unique Concepts,* 939 F.2d at 1563. Thus, this court agrees with the district court's determination that Jeneric has not shown a reasonable likelihood of success on literal infringement by Sensation.

 This court also sustains the district court's conclusion that Sensation would not literally infringe claim 2, dependent on claim 1. Dependent claim 2 allows addition of components as an opacifying agent, a pigment, or a fluorescing agent. Nonetheless, a dependent claim, by nature, incorporates all the limitations of the claim to which it refers. *See* 35 U.S.C. § 112, ¶ 4 (1994). The claimed ranges of claim 1, therefore, apply with equal force to claim 2. Thus, Sensation, containing 1.61% of cerium oxide, also does not infringe claim 2. To hold otherwise would violate a fundamental principle of patent law that "dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed." *Wahpeton Canvas Co., v. Frontier, Inc.,* 870 F.2d 1546, 1553, 10 USPQ2d 1201, 1208 (Fed.Cir.1989).

 Absent literal infringement, an accused product may nonetheless infringe under the doctrine of equivalents. The doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1876 (1997). An element in the accused product is equivalent to a claim element if the differences between the two are "insubstantial" to one of ordinary skill in the art. *See Hilton Davis Chem. Co. v. Warner–Jenkinson Co.,* 62 F.3d 1512, 1517, 35 USPQ2d 1641, 1644 (Fed.Cir.1995) (en banc), *rev'd on other grounds,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

The district court held that "Jeneric has not demonstrated a reasonable likelihood of success in proving that Cerpress infringes claim 1 of the '791 patent under the doctrine of equivalents." *Jeneric,* 1999 WL 66537, at *14. In its opinion, the district court noted that "Jeneric has not asserted the doctrine of equivalents with respect to the element of $Al_2O_3$ in claim 1 ... and invokes the doctrine only with regard to the element of $Li_2O$." *Id.* Having so noted, the district court summarily determined that Cerpress contained 15.97% of $Al_2O_3$ (aluminum oxide) and, therefore, does not literally fall within the claimed range of 7–15%. *See id.* Because it discerned that Cerpress does not literally infringe the aluminum oxide claim limitation, the district court did not perform an equivalents analysis for lithium oxide of claim 1. Skirting the equivalency issue, the district court noted: "Cerpress cannot infringe claim 1 even if Jeneric were to prove that the amounts of BaO, $B_2O_3$, and $Na_2O$ in Cerpress are equivalent to $Li_2O$." *Id.*

This analysis does not resolve infringement by equivalents for several reasons. First, the record reveals conflicting evidence on the amount of aluminum oxide Cerpress contains. Indeed, each party's evidence undercuts its own infringement position. A comparison table (the Sisson Table) – prepared by Jeneric's expert Professor Sisson – upon which the parties and the district court relied heavily, states Cerpress contains 15.97% of aluminum oxide – literally outside the claimed 7–15%. However, Dillon's evidence tends to prove the contrary. Dillon's own technical expert and owner of Chemichl AG, Dr. Michl, admitted that Cerpress contains 15.1% of aluminum oxide with a tolerance of ±0.1%. Dr. Michl also testified that lithium oxide is the sole difference between Cerpress and the claimed invention, thus suggesting that Cerpress falls literally within the aluminum oxide limitation. Moreover, the testing results of Terrachem – the testing laboratory Dillon retained – show that Cerpress contains 14.98% of aluminum oxide. Therefore, the record facts do not resolve the question of Cerpress's literal

infringement of the aluminum oxide limitation.

Despite the conflicting evidence, the district court appears to have relied solely upon the Sisson Table. That reliance, in the context of a preliminary injunction motion – where the trial court has considerable discretion – is harmless. The trial court is correct to hold Jeneric to its burden to show a likelihood of success and, therefore, to construe its own evidence against it. For this reason, no doubt, the district court relied solely on the Sisson Table in the context of a preliminary injunction motion.

Because the district court did not conduct an equivalents analysis, this court need not purport to review a decision not made. This court merely notes that this preliminary record discloses several issues for resolution during trial. For instance, the Sisson Table shows that Cerpress contains 0.041% of lithium oxide, outside the claimed 0.5–3%. A full record will show whether that difference is insubstantial. Also, Jeneric argues that the district court must consider evidence that barium oxide (1.02% of $BaO$), boron oxide (1.95% of $B_2O_3$), and sodium oxide ($Na_2O$) can act as fluxes and substitutes for lithium oxide. Dillon does not dispute that these compounds were known to function as fluxes. However, questions on the quantities necessary to substitute for lithium oxide require further factual development.

While affirming the district court's denial of a preliminary injunction, this court does not reach the issue of infringement under the doctrine of equivalents. That highly factual inquiry rarely comes clear on a premature record. Nonetheless, the district court will have the opportunity to adjudicate fully the merits of infringement under the doctrine of equivalents.

### Other Factors

Turning to the other factors, the district court determined that Jeneric did not show irreparable harm, and that the balance of hardships on the parties favored Dillon. With regard to the irreparable harm factor, the district court correctly stated: "Jeneric has not shown a reasonable likelihood of success, thus, it is not entitled to a rebuttable presumption of irreparable harm." *Jeneric*, 1999 WL 66537, at *14. On appeal, Jeneric does not present any argument on the other factors. Jeneric's lack of argument on the finding of irreparable harm further supports the district court's denial of a preliminary injunction.

### III.

Jeneric showed neither a likelihood of success on infringement nor irreparable harm. Therefore, under the highly deferential standard of review applicable to a preliminary injunction, this court determines that the district court properly denied Jeneric's motion. Because the district court did not abuse its discretion, this court affirms.

### COSTS

Each party shall bear its own costs.

*AFFIRMED.*