NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1615

CANON, INC.,

Plaintiff-Appellee,

v.

GCC INTERNATIONAL LIMITED, GCC MANAGEMENT LIMITED,
GATEHILL INTERNATIONAL LIMITED, Q-IMAGING (USA), INC.,
and TALLYGENICOM LP,

Defendants-Appellants.

Nicholas M. Cannella, Fitzpatrick, Cella, Harper & Scinto, of New York, New York, argued for plaintiff-appellee. With him on the brief were Brian V. Slater, and Joseph B. Divinagracia. Of counsel on the brief was Edmund J. Haughey, of Washington, DC.

Michael N. Rader, Wolf, Greenfield & Sacks, P.C., of Boston, Massachusetts, argued for defendants-appellants. With him on the brief were Michael A. Albert and James J. Foster.

Appealed from: United States District Court for the Southern District of New York

Judge P. Kevin Castel

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1615

CANON, INC.,

Plaintiff-Appellee,

v.

GCC INTERNATIONAL LIMITED, GCC MANAGEMENT LIMITED, GATEHILL INTERNATIONAL LIMITED, Q-IMAGING (USA) INC., and TALLYGENICOM LP,

Defendants-Appellants.

Appeal from the United States District Court for the Southern District of New York in case no. 06-CV-3324, Judge P. Kevin Castel.

_____

DECIDED: January 25, 2008

_____

Before MICHEL, <u>Chief Judge</u>, DYK, <u>Circuit Judge</u>, and GARBIS, <u>District Judge</u>.[*]

GARBIS, <u>District Judge</u>.

Plaintiff Canon, Inc. ("Canon") sued GCC International Limited, GCC Management Limited, Gatehill International Limited, Q-Imaging (USA) Inc., and TallyGenicom LP (collectively, "Defendants") for infringement of U.S. Patent No. 6,336,018 ("the '018 Patent"), entitled "Electrophotographic Image Forming Apparatus, Process Cartridge, and Drive Mount for Photosensitive Drum."

---

[*] Honorable Marvin J. Garbis, Senior District Judge, United States District Court for the District of Maryland, sitting by designation.

On August 29, 2006, the district court issued its Memorandum and Order granting Canon a Preliminary Injunction enjoining Defendants from, among other things, "making, using, offering for sale, or selling in the United States, or importing into the United States, any product that falls within the scope of claim 58 of U.S. Patent No. 6,336,018, including, without limitation, [certain identified] toner cartridges . . . ." Canon Inc. v. GCC Int'l Ltd., No. 06-3324 (S.D.N.Y. Aug. 29, 2006).

Defendants appeal from the grant of a preliminary injunction.[1]  For the reasons discussed herein, this court determines that the district court did not abuse its discretion and, therefore, affirms.

## I.    BACKGROUND

At all times relevant hereto, Canon has engaged in the business of producing and selling, inter alia, laser printers and laser fax machines with replaceable toner cartridges.  A user purchasing a Canon printer receives the printer with a replaceable toner cartridge.  When the toner in the cartridge is exhausted, the user can easily remove and replace the exhausted toner cartridge.  The sale of replacement toner cartridges is a profitable aspect of Canon's business.

At all times relevant hereto, Defendants have engaged in the business of selling (among many other products) toner cartridges that can be used as replacements in Canon laser printers and laser fax machines.

Canon is the assignee of the '018 Patent.  Claim 58 of the '018 Patent claims:

A process cartridge detachably mountable to a main assembly of an electrophotographic image forming apparatus, wherein said main

---

[1]    Defendants also seek reversal of the District Court's denial of their motion for summary judgment.  However, the denial of summary judgment was not an appealable Order and will not be addressed herein.

assembly includes a motor, a driving rotatable member for receiving driving force from said motor, and a hole defined by twisted surfaces, said hole being substantially coaxial with said driving rotatable member, said process cartridge comprising:

a cartridge frame;

an electrophotographic photosensitive drum;

process means actable on said photosensitive drum, said process means including a developing roller for developing a latent image formed on said photosensitive drum, and a charging member for electrically charging said photosensitive drum;

a projection provided at a longitudinal end of said photosensitive drum, wherein said projection has an engaging portion for engagement with the twisted surfaces and a supporting portion for supporting said engaging portion, wherein said end of said photosensitive drum is provided with a shaft for supporting said photosensitive drum on said cartridge frame, and said engaging portion is supported on said shaft by said supporting portion, and a cross section of said supporting portion in a direction crossing with a longitudinal direction of said photosensitive drum is smaller than a cross section of said engaging portion, and said supporting portion is capable of entering said hole, and wherein when said driving rotatable member rotates with said hole, and said engaging portion of said projection engaged with each other, rotational driving force is transmitted from said driving rotatable member to said photosensitive drum through engagement between said hole and said projection, and said projection is urged inwardly of said hole, wherein said engaging portion is contacted to said twisted surfaces at least three points, and wherein said end of said photosensitive drum is provided with a drum gear which is effective to transmit a driving force received by said engaging portion from the main assembly to said developing roller.

Canon asserts that Defendants' toner cartridges ("the Accused Products"), usable in Canon laser printers and laser fax machines, infringe Claim 58 of the '018 Patent.

Defendants sought an early claim construction holding that Claim 58 covers the combination of a "main assembly" consisting, according to Defendants, of the entire printer or fax machine with a toner cartridge. Defendants contend that if Claim 58 is so

construed, they would not infringe Claim 58 because they sell only the cartridge, not the combination. Accordingly, Defendants assert that their production and sale of the accused toner cartridges would not infringe Claim 58 by virtue of the doctrine of permissible repair. Under the doctrine of permissible repair, the owner of patented property has a lawful right to repair or replace his property. See Aro Mfg. Co. v. Convertible Top Co., 365 U.S. 336 (1961); see also Everpure, Inc. v. Cuno, Inc., 875 F.2d 300, 302 (Fed. Cir. 1989), cert. denied, 493 U.S. 853 (1989). Defendants alternatively advance a theory of implied license, relying upon Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp., 123 F.3d 1445, 1455 (Fed. Cir. 1997), cert. denied, 523 U.S. 1022 (1998) ("[W]hen a patentee sells a device without condition, it parts with the right to enforce any patent that the parties might reasonably have contemplated would interfere with the use of the purchased device.").

The district court held that Claim 58 claimed the cartridge alone and not as part of a combination. Therefore, the doctrine of permissible repair was not applicable. The district court further held that Canon's sale of a printer or fax machine with a toner cartridge therein did not constitute an implied license to manufacture and sell the toner cartridge. Thus, the district court concluded that Canon had a likelihood of success on its infringement claim. Upon further finding that a balance of the hardships and consideration of the public interest favored Canon, the district court issued the preliminary injunction at issue.

## II. DISCUSSION

In patent cases, traditional rules of equity apply to requests for injunctive relief. eBay, Inc. v. MercExchange, L.L.C., ____ U.S. ____, ____, 126 S.Ct. 1837, 1839 (2006). As stated in Pfizer, Inc. v. Teva Pharms. USA, Inc.:

> [District courts] have the power to grant injunctions to prevent the violation of patent rights. See 35 U.S.C. § 283 (2000). In considering whether to grant a preliminary injunction, a court must consider whether the patent owner has shown: (1) a reasonable likelihood of success on the merits; (2) the prospect of irreparable harm to the patent owner in the absence of the injunction; (3) that this harm would exceed harm to the alleged infringer when subject to the injunction; and (4) that granting the injunction is in the public interest. Jeneric/Pentron, Inc. v. Dillon Co., 205 F.3d 1377, 1380 (Fed. Cir. 2000); Nutrition 21 v. United States, 930 F.2d 867, 869 (Fed. Cir. 1991).

> We review the grant of a preliminary injunction for abuse of discretion. Novo Nordisk of N. Am., Inc. v. Genentech, Inc., 77 F.3d 1364, 1367 (Fed. Cir. 1996). To overturn the grant of a preliminary injunction, we must find that the district court made a clear error of judgment in weighing the relevant factors or based on its exercise of discretion on an error of law or on clearly erroneous factual findings. Id.

429 F.3d 1364, 1372 (Fed. Cir. 2005).

### A. Likelihood of Success on the Merits

This court does not encourage interlocutory appeals from claim construction decisions. Moreover, it is not always appropriate for trial courts to single out particular terms in a claim for "early" construction outside of the contextual setting provided by consideration of all disputed claim terms. Nevertheless, it can be necessary to consider the construction of some claim terms in the process of resolving a request for a preliminary injunction.

In its preliminary injunction decision, the district court construed Claim 58 to cover the toner cartridge alone and not as part of a combination. If Claim 58 is so

construed, the doctrine of permissible repair would be inapplicable altogether. See Fuji Photo Film Co., LTD v. Int'l Trade Comm'n, 474 F.3d 1281, 1296 (Fed. Cir. 2007).

On the present record, there is a reasonably debatable question of whether Claim 58 should be construed to cover the cartridge alone or the cartridge as part of a combination. Therefore, this court is not now reaching its final conclusion as to the matter. However, even if Claim 58 were construed to cover the cartridge as part of a combination, Canon would still have a substantial likelihood of success.

If Claim 58 were construed as covering a combination, it is unlikely that the covered combination would include the toner cartridge and the entirety of the printer or fax machine since most of the components of such machines are not claimed. On the contrary, as appears from the claims, the most likely combination would be one consisting of the toner cartridge and the claimed "hole defined by twisted surfaces." '018 Patent cl.58.

In respect to such a combination, it is likely that the replacement of the toner cartridge part of the combination would not constitute a permissible repair. We have divided permissible repair into two categories—replacement of readily replaceable parts and refurbishment. In each instance the concept of proportionality is pertinent, though less so in the case of readily replaceable parts. A part is not readily replaceable if the part in question constitutes the bulk of the value of the patented item. And refurbishment is not a permissible repair if, for example, "the extent of the refurbishment . . . [would be] disproportionate to the overall value of the parts that were not replaced." Fuji Photo Film, 474 F.3d at 1296; see also Husky Injection Molding Sys., Ltd. v. R & D Tool & Eng'g Co., 291 F.3d 780, 786-87 (Fed. Cir. 2002) (noting that replacing the

entirety of a patented car except for its spark plugs would be impermissible reconstruction). Thus, it appears that under the facts of this case, the replacement of the toner cartridge would constitute impermissible reconstruction because it would essentially be a "second creation of the patented entity." Aro Mfg. Co., 365 U.S. at 346 (citations omitted).

In sum, Canon has established a substantial likelihood—albeit not a certainty—of success on its claim that Defendants have infringed Claim 58 of the '018 Patent.

B. Irreparable Harm Balance

At the preliminary injunction stage, irreparable harm consists of harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits. DAN B. DOBBS, LAW OF REMEDIES 193-94 (2d ed. 1993). To reach an irreparable harm balance, a trial court compares the irreparable harm that would be sustained by the movant if a preliminary injunction were erroneously denied with the irreparable harm that would be sustained by the non-movant if a preliminary injunction were granted in error. Id. at 187.

As the trial court found, competition from Defendants will likely result in substantial price erosion of Canon's patented product as well as loss of Canon's market share. Due to the difficulty (if not impossibility) of determining the damages resulting from price erosion and loss of market share, an award of money damages would not be sufficient. Moreover, Defendants' business operations are geographically "far-flung," making the enforcement of a money judgment "exceedingly difficult." Canon Inc. v. GCC Int'l, Ltd., 450 F. Supp. 2d 243, 255 (S.D.N.Y. 2006). Thus, to the extent that money damages against Defendants were awarded, there appears to be a reasonable

basis for the district court's finding that there would be little probability that Canon could effect the collection of a money judgment.

On the other hand, as the district court found, there is little, if any, harm that would be suffered by Defendants by virtue of an erroneous grant of a preliminary injunction that could not be fully compensated by a money damage award against Canon under Fed. R. Civ. P. 65(c).

In light of Canon's demonstration of the potential of substantial irreparable harm, and Defendants' failure to make any such demonstration, this court agrees with the district court's conclusion that the irreparable harm balance favors Canon.

## C.    Public Interest

As the district court noted, the public benefits from lower prices resulting from free market competition. However, the public also has an interest in the enforcement of patents. Hence, consideration of the public interest favors neither side.

## D.    The Ultimate Balance

The ultimate decision in a preliminary injunction context requires a flexible balancing of the parties' respective showings of potential irreparable harm and the movant's likelihood of success on the merits. "If, after balancing [the irreparable harm to plaintiff against that of the defendant], the balance tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 813 (4th Cir. 1991) (internal quotation marks omitted). "A request for a preliminary injunction is evaluated in accordance with a

'sliding scale' approach: the more the balance of irreparable harm inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction." Kowalski v. Chicago Tribune Co., 854 F.2d 168, 170 (7th Cir. 1988).

In the instant case, the district court reasonably evaluated Canon's likely success on the merits and the irreparable harm balance and did not abuse its discretion in granting the preliminary injunction.

CONCLUSION

For the foregoing reasons, the district court's grant of the preliminary injunction is affirmed.

COSTS

No costs.