NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**COBALT BOATS, LLC,**
*Plaintiff-Appellee*

**v.**

**BRUNSWICK CORPORATION,**
*Defendant-Appellant*

———————————

2018-1376

———————————

Appeal from the United States District Court for the Eastern District of Virginia in No. 2:15-cv-00021-HCM-LRL, Senior Judge Henry C. Morgan, Jr.

———————————

Decided: May 31, 2019

———————————

BRADLEY SCOTT EIDSON, Stinson LLP, St. Louis, MO, argued for plaintiff-appellee. Also represented by SAMIR RAMESH MEHTA; ROBERT A. ANGLE, Troutman Sanders LLP, Richmond, VA.

JOHN C. O'QUINN, Kirkland & Ellis LLP, Washington, DC, argued for defendant-appellant. Also represented by NATHAN S. MAMMEN; MICHAEL J. ABERNATHY, JASON C. WHITE, Morgan, Lewis & Bockius LLP, Chicago, IL.

———————————

Before DYK, REYNA, and WALLACH, *Circuit Judges.*

DYK, *Circuit Judge.*

Cobalt Boats, LLC owns U.S. Patent No. 8,375,880 (the '880 patent), which relates to a swim step—a small platform attached to the stern of a boat that makes it easier to get in and out of the water. Brunswick Corporation sells boats with an optional swim step. Cobalt sued Brunswick alleging infringement of the '880 patent. After trial, the jury found that Brunswick literally infringed claim 4 and that it infringed claims 4 and 5 under the doctrine of equivalents. The district court entered judgment in accordance with the verdict.

We reverse. Under the correct claim construction, the undisputed evidence shows no literal infringement of claim 4, and Cobalt cannot establish infringement of claims 4 and 5 under the doctrine of equivalents because of prosecution history estoppel.

BACKGROUND

The claims of the '880 patent are directed to a swim step. The only claims at issue are claim 4, which depends from claim 1, and claim 5.[1]

Claim 1 recites:

A retractable step for use with a boat in water comprising:

> a base having a recess;

---

[1]    In *Brunswick Corp. v. Cobalt Boats, LLC*, 696 F. App'x 1021 (Fed. Cir. 2017), an appeal from an inter partes review ("IPR") proceeding, we affirmed without opinion the Patent Trial and Appeal Board's decision that claim 1 was shown to be unpatentable, but claims 4 and 5 were not.

a pair of stationary arms, each of said arms coupled with said base;

a pair of moveable arms, each of said moveable arms coupled with one of said stationary arms;

a step having a top side and an underside, said step coupled with said moveable arms and <u>capable of being rotated 180°</u> between a stored position within said recess, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed; and

a spring biased locking mechanism configured to hold at least one of said moveable arms in a stationary position when said platform is in said deployed position and releasable to accommodate movement of said platform to said stored position.

'880 patent, col. 4, ll. 15–32 (emphasis added).

Claim 4 recites "[t]he retractable step of claim 1, wherein said step comprises a material characterized in that it is less dense than water." *Id.* col. 4, ll. 36–38.

Claim 5 recites:

A deployable swim step for use with a boat in water comprising:

a step having a top side and an underside;

means for coupling said step with the boat, said coupling means <u>configured to permit rotation of said step 180°</u> from a stored position above the water surface, wherein said underside is exposed, and a deployed

> position below the water surface, wherein said top side is exposed; and
>
> means for locking said coupling means in a stationary position when said step is in said deployed position, said locking means further configured to accommodate movement of said step to said stored position.

*Id.* col. 4, ll. 39–51 (emphasis added).

On January 23, 2015, Cobalt filed suit against Brunswick in the Eastern District of Virginia for patent infringement based on Brunswick's sales of its swim step. After trial, the jury found that claim 4 was literally infringed, that both claims 4 and 5 were infringed under the doctrine of equivalents, and that Brunswick's infringement was willful. The jury awarded a per-unit royalty of $2,500, resulting in a damages award of $2,690,000.

Post-trial, the district court enhanced the damages award by a factor of 1.5 and awarded damages for post-verdict sales, resulting in a total damages award of $5,396,250. The court also granted Cobalt's motion for a permanent injunction. The court further found that the case is exceptional and awarded attorneys' fees to Cobalt. The court denied Brunswick's post-trial motions for judgment as a matter of law on liability, damages, and willfulness.

Brunswick timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1) (2012).

DISCUSSION

I

We first address Brunswick's contention that the district court erred by not resolving the parties' dispute regarding the scope of the "180 degrees" limitation, and that

under the proper construction Brunswick's products do not infringe as a matter of law.

A

The central limitations at issue in this appeal are the "capable of being rotated 180°" limitation of claim 4 and the "configured to permit rotation of said step 180°" limitation of claim 5. The parties agree that these limitations have the same meaning. We therefore treat these as a single limitation and refer to it as the "180 degrees" limitation.

"When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *Id.* at 1361. It is not appropriate to leave to the jury the task of resolving claim construction disputes.

The parties disputed the construction of the "180 degrees" limitation at *Markman*. Brunswick proposed that the "180 degrees" limitation be construed to mean "capable of being rotated at least 180 degrees," such that a swim step that can rotate 170 degrees at most would not meet the limitation, but one that can rotate 240 degrees would. Cobalt disagreed and proposed the term be given its "plain and ordinary meaning" or be construed to mean "flipped or turned over," and that a step that cannot rotate a full 180 degrees could meet the limitation. The district court adopted Cobalt's primary position, holding that the "180 degrees" limitation should be given its "plain and ordinary meaning" and rejecting Brunswick's proposed construction.

After *Markman*, the parties continued to dispute the "plain and ordinary meaning" of the term. Both sides filed

motions in limine to exclude the opposing expert's testimony as contrary to the plain and ordinary meaning. Cobalt moved to exclude Brunswick's expert's testimony "that any rotation over or more than 180°" would meet the limitation. J.A. 593. Conversely, Brunswick moved to exclude Cobalt's expert's testimony that the term could "encompass a rotation of less than 180° or that the term should be used 'colloquially' to mean flipping over." J.A. 603. Instead of resolving this dispute as to scope, as it was required to do under *O2 Micro*, the district court erroneously determined that whether the term "has to be interpreted strictly to be limited to exactly 180 degrees" was an issue that would "have to be resolved by the finder of fact." J.A. 676.

Cobalt concedes that under our cases, Brunswick, having raised the claim construction issue at *Markman*, was not required to re-raise that claim construction argument at the charge conference to preserve it for appeal. *See O2 Micro*, 521 F.3d at 1359 ("When the claim construction is resolved pre-trial, and the patentee presented the same position in the *Markman* proceeding as is now pressed, a further objection to the district court's pre-trial ruling may indeed have been not only futile but unnecessary." (citation omitted)). However, Cobalt nonetheless argues that Brunswick waived any challenge to the construction of the "180 degrees" limitation at the charge conference.

There was no waiver. Cobalt contends that Brunswick invited any claim construction error when Brunswick's counsel stated at the charge conference that "I think we can resolve this dispute by saying, 'No further construction is needed, plain and ordinary meaning to a person of skill in the art.'" J.A. 3202–03. In context, it is clear that the "dispute" in question was not the original claim construction dispute presented at *Markman*, but rather a dispute about what additional instruction the court should give the jury regarding how to apply the "plain and ordinary meaning" construction. All Brunswick proposed was that the district court explain to the jury that "when an instruction uses

plain and ordinary meaning, that is plain and ordinary meaning to one of skill in the art." J.A. 3202. Seeking a limited modification to the district court's adopted construction, when the court has already rejected the litigant's proposed construction, does not constitute waiver. *See In re Papst Licensing Dig. Camera Patent Litig.*, 778 F.3d 1255, 1265–66 (Fed. Cir. 2015) (rejecting an argument similar to Cobalt's as "wholly without merit"). Brunswick did not surrender its earlier claim construction argument. At the charge conference, Cobalt recognized that "with the testimony that's being considered by the jury, there seems to be a dispute now that is more a legal dispute as to the scope" of the limitation. J.A. 3200. Significantly, in its post-trial decision, even the district court rejected Cobalt's contention that Brunswick waived its claim construction argument.

B

We next turn to the merits of the claim construction. We review the ultimate claim construction and interpretations of intrinsic evidence de novo. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 840–41 (2015). We review any underlying factual findings for clear error. *Id.* Here, the district court concluded in its post-trial decision that even if it erred in not further construing the "180 degrees" limitation under O2 Micro, any error was harmless because it would have ruled in favor of Cobalt's preferred definition.

We agree with Brunswick that the "180 degrees" limitation requires that the step be capable of rotating at least 180 degrees, not merely "flipping over" as Cobalt contends. At oral argument, Cobalt confirmed that it is essentially requesting a construction of the term "180 degrees" to mean "about 180 degrees." *See* Oral Arg. at 33:49–34:15. But the claim says "180 degrees," not "about 180 degrees." Where a precise value is included in the claim without a term such as "about," we interpret the claim language as imposing a strict numerical boundary, absent evidence

that such a construction would be inconsistent with the intrinsic evidence. For example, in *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1381 (Fed. Cir. 2000), we construed a claim that "recite[d] precise ranges for the weight of dental compositions" as limited to exactly those ranges. We concluded that "[w]ithout broadening words that ordinary receive some leeway," such as "about," "the precise weight ranges of claim 1 do not 'avoid a strict numerical boundary to the specified parameter.'" *Id.* (quoting *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995)). Similarly, in *Elekta Instrument S.A. v. O.U.R. Scientific International, Inc.*, 214 F.3d 1302 (Fed. Cir. 2000), we held that a claim term reciting radiation sources and beam channels "only within a zone extending between latitudes 30°–45°" "only encompasses 30°–45°," not anything less than 30 degrees. *Id.* at 1307–08.

So too here. The claim does not use "about," which suggests that 180 degrees serves as a precise numerical boundary for the minimum rotation of the step. Nor does the intrinsic evidence suggest a different construction: as discussed further below in Section III, the "180 degrees" limitation was added during prosecution to distinguish prior art swim steps that were only capable of rotating less than 180 degrees. We therefore construe the "180 degrees" limitation to require that the swim step be capable of rotating at least 180 degrees. That means that a step that can rotate at most 179 degrees would not meet the limitation, while a step that can rotate 181 degrees would.

Cobalt argues that it amended the claims during prosecution to add the "180 degrees" limitation simply to require flipping of the swim step (which could include rotation by less than 180 degrees), not to require capability of rotating 180 degrees or more. But other added claim terms already require flipping. For example, if the 180 degrees number were removed from claim 5, the claim would require "coupling means configured to permit rotation of said step [] from a stored position above the water surface,

wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed." '880 patent, col. 4, ll. 42–47 (emphases added). Rotation that results in the opposite side of the step being exposed *is* flipping. As discussed below in Section III, Cobalt added these "underside" and "top side" terms at the same time as the 180 degrees number. That the "underside" and "top side" terms already require flipping confirms that the "180 degrees" limitation does not merely require flipping, but rather imposes a precise numerical boundary for the minimum number of degrees that the step must be able to rotate. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed. Cir. 2016) ("Construing a claim term to include features . . . already recited in the claims would make those expressly recited features redundant.").

At trial, Cobalt's expert testified that the "180 degrees" limitation should not be interpreted as a precise numerical boundary because manufacturing variances would make it impossible to achieve such precision. However, the construction we adopt does not require the swim step to rotate exactly 180 degrees, it requires the swim step to be capable of rotating *at least* 180 degrees, which allows for variance above 180 degrees. There is no suggestion here that it would be impossible to manufacture a swim step that is capable of rotating at least 180 degrees.

We note that the construction we adopt is consistent with the decision by the Patent Trial and Appeal Board in the IPR proceeding regarding this patent, which explained that to meet the "180 degrees" limitation, "a step must be able to be rotated at least 180 degrees from the stored position." *Brunswick Corp. v. Cobalt Boats, LLC*, No. IPR2015-01060, Paper 78, at 19 (P.T.A.B. Sept. 28, 2016).

## II

We next turn to the issue of literal infringement under the correct claim construction. The jury found literal infringement of claim 4. We review the jury's determination

of infringement for substantial evidence. *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1344 (Fed. Cir. 2019).

Under our construction of the "180 degrees" limitation, Brunswick's swim step literally infringes only if it is capable of rotating at least 180 degrees. It is undisputed that Brunswick's accused swim step is *not* capable of rotating 180 degrees. Uncontroverted testimony at trial established that the maximum rotation of Brunswick's swim step is between 172 and 179 degrees and that the hinges on the swim step have a "very rigid stop" that prevents any rotation beyond that, J.A. 2887. Cobalt's own expert testified that he measured the amount of rotation of the accused swim step and determined that it was "within a couple tenths of a degree of 177." JA 2441. The district court recognized in its post-trial opinion that "[t]here was no evidence at trial that any Brunswick step rotates a literal 180 degrees or farther." J.A. 10.

We therefore conclude there was no evidence from which the jury could find literal infringement of claim 4.

## III

Cobalt maintains that even under the construction of the "180 degrees" limitation that we have adopted, there was substantial evidence to support the jury's finding of infringement of claims 4 and 5 under the doctrine of equivalents. "The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002). However, the doctrine of equivalents is limited by prosecution history estoppel, which "precludes a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent." *Id.* at 734 (brackets omitted) (quoting *Wang Laboratories, Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1577 (Fed. Cir. 1997)). We review issues relating to

the application of prosecution history estoppel de novo. *O2 Micro*, 521 F.3d at 1363.

The patent examiner initially rejected several of Cobalt's claims, including claims 1 and 5, as anticipated by U.S. Patent No. 6,904,863 ("Mardikian"). Mardikian teaches a swim step that resembles a collapsible ladder, constructed out of telescoping tubes that allow the ladder to extend and retract. During storage, the swim step is collapsed and stored in a horizontal position. When deployed, the ladder is extended and rotated about 90 degrees so that it extends vertically into the water. To overcome the rejection, Cobalt amended the claims to add the following language:

> 1. A retractable step for use with a boat in water comprising: . . .
>
> > a step <u>having a top side and an underside</u>, <u>said step</u> coupled with said moveable arms and ~~moveable~~ <u>capable of being rotated 180°</u> between a stored position within said recess, <u>wherein said underside is exposed</u>, and a deployed position below the water surface, <u>wherein said top side is exposed</u>; . . .
>
> 5. A deployable swim step for use with a boat in water comprising: . . .
>
> > means for coupling said step with the boat, said coupling means configured to permit ~~movement~~ <u>rotation</u> of said step ~~between~~ <u>180° from</u> a stored position above the water surface, <u>wherein said underside is exposed</u>, and a deployed position below the water surface, <u>wherein said top side is exposed</u>; . . .

J.A. 984.

Cobalt does not dispute that because it added the "180 degrees" limitation to avoid prior art during prosecution, prosecution history estoppel applies to some extent. *See Festo*, 535 U.S. at 735 (prosecution history estoppel "applies to amendments made for a 'substantial reason related to patentability,'" including "to avoid the prior art" (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co*, 520 U.S. 17, 33 (1997))). However, Cobalt argues that because it added the limitation to distinguish Mardikian's step, which "rotated from horizontal to vertical (e.g., 90°)," "Brunswick's swim step was not within the scope of surrender." Cobalt Response Br. at 49–50. Cobalt essentially argues that it only surrendered what was needed to distinguish the prior art.

We disagree. We have repeatedly held that the scope of disclaimer is measured by the difference between the original and the amended claims, not the difference between the amended claims and the prior art that was avoided through the amendment. *See Festo*, 535 U.S. at 740 (scope of the disclaimer is the "territory between the original claim and the amended claim); *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1218 (Fed. Cir. 2008) ("It is not relevant to the determination of the scope of the surrender that the applicant did not need to amend the claims . . . [as they were amended] in order to overcome the prior art."). "[I]t frequently happens that patentees surrender more through amendment than may have been absolutely necessary to avoid particular prior art. In such cases, we have held the patentees to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to." *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1381 (Fed. Cir. 2008) (quoting *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356. 1361–62 (Fed. Cir. 2005)). In particular, when claims are amended to include a specific numeric boundary, we have held that the patentee cannot later recapture what is

beyond that boundary through the doctrine of equivalents. *See Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1577–78 (Fed. Cir. 1997) (holding that because the patentee added a limitation during prosecution requiring eight capacitors, it was barred by prosecution history estoppel "from resorting to the doctrine of equivalents to extend the patent's scope to cover nine capacitors"). These cases squarely foreclose Cobalt's argument that it only surrendered what was necessary to overcome the prior art.

As explained above, the proper construction of the claims as amended requires that the swim step be capable of rotating at least 180 degrees. The original claim required no rotation at all. Cobalt therefore disclaimed the territory between steps that can rotate at least 180 degrees and steps that cannot rotate at all—in other words, all swim steps that are not capable of rotating 180 degrees. Brunswick's swim step falls within the scope of this surrender, since it can only rotate less than 180 degrees.

Accordingly, Cobalt was barred by prosecution history estoppel from asserting that Brunswick's swim step satisfied the "180 degrees" limitation of claims 4 and 5 under the doctrine of equivalents.

IV

Because we reverse the judgment on the issue of liability, we need not address Brunswick's argument that the judgment should be vacated because venue was improper in the Eastern District of Virginia. Here, Brunswick represented at oral argument that if we reverse the judgment on liability, we need not address its venue objection. *See* Oral Arg. at 4:14–22.

Nor need we address the issue of damages, although we note that we have substantial reservations about the district court's damages rulings, which permitted Cobalt to present a damages calculation to the jury that used the profit of entire boats as its starting point—even though

Cobalt concedes "that the swim step is not 'the basis' of demand" for Brunswick's boats, Cobalt Response Br. at 52. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 978–79 (Fed. Cir. 2018) (admission of evidence of entire market value appropriate only when the patented feature "forms the basis for consumer demand"); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (en banc). For the same reason, we also do not reach Brunswick's challenges to the district court's award of enhanced damages and attorneys' fees.

## CONCLUSION

Because under the proper construction of the "180 degrees" limitation there is no evidence of literal infringement of claim 4, and because Cobalt was barred by prosecution history estoppel from asserting infringement of claims 4 and 5 under the doctrine of equivalents, Brunswick was entitled to judgment as a matter of law of no infringement.

**REVERSED**